# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

SAMMY LYNN KEY,          )
                                )
            Petitioner,       )
                                )
v.                         )     **Case No. CIV 14-283-RAW-KEW**
                                )
KAMERON HARVANEK, Warden,  )
                                )
            Respondent.     )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at Mack Alford Correctional Center in Stringtown, Oklahoma. He is attacking his convictions and sentence of life without parole in Bryan County District Court Case No. CF-2011-175 for Trafficking in Methamphetamine (Count 1), After Former Conviction of Two or More Violations of the Uniform Controlled Dangerous Substances Act; Unlawful Possession of a Firearm, After Former Felony Conviction (Count 2); and Possession of Drug Paraphernalia (Count 3). He sets forth the following grounds for relief:

    I.     Insufficient evidence to prove Petitioner had dominion and control, or even any knowledge whatsoever, of the trafficking quantity of methamphetamine found in Ms. Maxey's lingerie drawer.

    II.    Petitioner's mandatory sentence of life without parole for Count 1 is excessive and violates his protection under both the federal and state Constitutions against cruel and unusual punishment.

    III.   Insufficient evidence to prove Petitioner was guilty of Unlawful

Possession of a Firearm, After Former Felony Conviction.

IV.    The trial court committed plain error by denying Petitioner's request for a mistrial, thereby preventing him from receiving a fair and impartial jury trial.

V.    Petitioner was prejudiced by ineffective assistance of counsel.

VI.    The trial court committed plain error by failing to give Oklahoma Uniform Jury Instruction 9-6A, advising the jury that they were required to give separate consideration to each of the three counts charged.

VII.    The trial court erred by failing to follow the statutorily-mandated procedures when the jury had questions both during the first stage and second stage of Petitioner's jury trial.

VIII.    The cumulative effect of all the cited errors deprived Petitioner of a fair trial and warrants relief.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the Court for consideration in this matter:

A.    Petitioner's direct appeal brief.

B.    The State's brief in Petitioner's direct appeal.

C.    Petitioner's reply brief.

D.    Summary Opinion affirming Petitioner's judgment and sentence. *Key v. State*, No. F-2012 (Okla. Crim. App. July 25, 2013).

D.    Transcripts

E.    State court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of the case in its Opinion affirming Petitioner's Judgment and Sentence:

> On March 25, 2011, members of the Bryan County Sheriff's Department, the District 19 Drug Task Force, the Oklahoma Highway Patrol and the Durant Police Department executed a search warrant on the mobile home located at 303 Martin Lane, Colbert, Oklahoma. Lori Maxey owned the mobile home and shared the residence with Appellant.

> When the officers approached the mobile home, they discovered Shane St. Clair in the front yard. St. Clair was texting Appellant's cell phone asking: "I'm outside if ur up or at home?" (State's Ex. No. 20). The officers knocked on the door and announced their presence three times to no avail. They breached the door and found Appellant and Maxey lying in bed in the master bedroom. Both were clothed with a T-shirt. The officers permitted Appellant and Maxey to fully cloth [sic] themselves and then placed them in the living room.

> The officers searched the home and found 26.44 grams of crystalline methamphetamine, 2 glass pipes, aluminum foil, and a digital scale that looked like a pack of Marlboro cigarettes in a dresser drawer filled with female undergarments. The methamphetamine was in both a clear baggie and red zipit baggies. The officers found a ball cap on the dresser. The ball cap contained Appellant's billfold, cell phone, cash, and a baggie containing .22

3

grams of powdered methamphetamine. In the floor next to the bed the officers located a propane torch frequently used by drug users to heat and smoke methamphetamine.

The door to the closet in the bedroom was open. Officers found a loaded pistol on the shelf and a rifle in its case.

Several vehicles were parked in the yard of the residence. A red Dodge Stratus four-door and a faded blue Chevrolet pickup were parked in front of the home. Appellant's truck was parked next to the mobile home and had a stock trailer hitched to it. A green Jeep Grand Cherokee was also parked on the side of the home. The officers searched the vehicles. Inside Appellant's stock trailer the officers found numerous items associated with the manufacture of methamphetamine. The officers located coffee filters, straws, a glass mason jar, a yellow bucket, hydrogen peroxide, used rubber gloves, and a Gatorade bottle with two pieces of black tubing and electrical tape on it. The Gatorade bottle had been transformed into a hydrogen chloride gas generator used to powder-out methamphetamine in the final processes of making the drug. The bottle was tested and determined to contain methamphetamine.

The Jeep Grand Cherokee was registered to Constance Clites. The keys to the vehicle were found inside the residence. The officers had last observed this vehicle when they conducted an inventory search of the vehicle before it was impounded from the courthouse parking lot on the day that Clites went to prison for manufacturing methamphetamine. A search of the Jeep also revealed numerous items associated with the manufacture and use of methamphetamine. The officers located acetone, digital scales, an empty Gatorade bottle with black tubing and electrical tape on it, red zipit baggies, and a broken methamphetamine pipe. One of the baggies contained a cutting agent used to dilute methamphetamine for resale. Officers also found a box of .32 caliber automatic ammunition that matched the pistol found in the closet. None of these items were in the vehicle on the day that Clites went to prison.

Officers obtained a search warrant for Appellant's cell phone and extracted information from the device. The incoming and outgoing text messages revealed Appellant's ongoing personal and business relationship with Maxey. Appellant used Maxey's mobile home as his residence when it suited his purposes. Appellant and Maxey had a twelve-month-old daughter together. Appellant interacted extensively with Maxey's young son. Both Appellant and Maxey helped each other sell methamphetamine. They shared money and

some bills. However, Appellant's relationship with Maxey was not totally exclusive. Appellant spent time in the home of Charla Carbaugh as well. Appellant's choice to spend consecutive nights with Carbaugh angered Maxey and caused her to lash out at him in the text messages. Ultimately, Maxey accepted Appellant's behavior. The day before the officers executed the search warrant on her mobile home, Maxey asked Appellant to come with her to check the quality of some methamphetamine. When Appellant failed to timely respond, Maxey complained that Appellant knew that she did not have any methamphetamine but that she didn't know why she would expect anything different from him.

*Key v. State*, No. F-2012-211, slip op. at 2-4 (Okla. Crim. App. July 25, 2013) (unpublished) (Dkt. 10-4). The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

## Ground I: Sufficiency of the Evidence (Count 1)

Petitioner alleges in Ground I that the evidence was insufficient to sustain his conviction for Trafficking, as alleged in Count 1, because the evidence did not demonstrate his knowledge of or control over the methamphetamine found in Ms. Maxey's lingerie drawer in her home. Respondent asserts the OCCA's determination of this claim was not contrary to, or an unreasonable application of, Supreme Court law, nor was it based on an unreasonable determination of the facts presented on direct appeal.

Sufficiency of the evidence is a mixed question of law and fact. We ask whether the facts are correct and whether the law was properly applied to the facts, which is why we apply both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas.

*Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006) (citations omitted), *cert. denied*, 549 U.S. 1285 (2007).

The OCCA analyzed and denied relief on this claim as follows:

In his first proposition of error, Appellant challenges the sufficiency of the evidence supporting his conviction for trafficking in methamphetamine. We review to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004); *Speuhler v. State*, 709 P.2d 202, 203-204 (Okla. Crim. App. 1985). The requisite elements of trafficking in methamphetamine are:

> First, knowingly;
>
> Second, possessed;
>
> Third, twenty (20) grams or more of methamphetamine.

*Lewis v. State*, 150 P.3d 1060, 1062 (Okla. Crim. App. 2006); Okla. Stat. tit. 63 § 2-415(C)(4)(a) (Supp. 2007); Inst. No. 6-13, OUJI-CR(2d) (Supp. 2010).

Appellant does not dispute that the officers discovered 26.44 grams of crystalline methamphetamine in the mobile home but instead contends that the evidence fails to show that he knowingly possessed the drug. As he did at trial, Appellant contends that it was Maxey's home and that she solely possessed the methamphetamine. The State contends that sufficient evidence was presented to establish that Appellant was in constructive possession of the methamphetamine.

> It has been frequently held in this State that the possession prohibited by the drug laws need not be actual physical custody of the controlled substance; it is sufficient that the State prove the accused to have been in constructive possession of the contraband material by showing that he had knowledge of its presence and the power and intent to control its disposition or use. Further, possession need not be exclusive; a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willingly and knowingly shares with the other the right to control the contraband. We have, however, repeatedly held that proof of mere proximity to a prohibited substance is insufficient. Whether the case is tried on the theory of sole or joint possession, proof that the accused

6

was present at a place where drugs were being used or possessed
is, in and of itself, insufficient to justify a finding of possession.
There must be additional evidence of knowledge and control.

*Staples v. State*, 528 P.2d 1131, 1133 (Okla. Crim. App. 1974) (internal
citations omitted). Circumstantial evidence which shows that a controlled
dangerous substance was found on premises possessed by the accused and
under his exclusive control, permits an inference of knowledge and control of
that substance. *Id.* Absent exclusive access, use, or possession of the
premises, it may not be inferred that the accused had knowledge and control
of the substance unless there are additional independent factors showing the
accused's knowledge and control of the substance. *Id.* at 1134. Additional
independent factors showing knowledge and control may consist of
incriminating statements made by the defendant, incriminating conduct by the
accused, prior police investigation, or any other circumstance from which
possession may be fairly inferred. *Id.*

Taking the evidence in the present case in the light most favorable to the State,
we find that any rationale [sic] trier of fact could have found that Appellant
was in constructive possession of the 26.44 grams of methamphetamine
beyond a reasonable doubt. The officers found the methamphetamine on
premises that were not solely possessed or under the exclusive control of a
single individual. The evidence was such that the jury could have reasonably
concluded that Appellant maintained Maxey's mobile home as a residence.
*See Black's Law Dictionary* 1335 (Eighth Edition 2004) ("bodily presence as
an inhabitant in a given place"). The text messages introduced into evidence
illustrated that Appellant frequented the mobile home. Appellant received
mail at the residence. The officers found Appellant in bed with Maxey in the
mobile home on the day that they discovered the methamphetamine.
Appellant's twelve-month-old daughter with Maxey was also inside the home.
Appellant took Maxey's son to little league baseball practice. He received
messages updating him as to practice and game times. Maxey sent Appellant
angry text messages when he failed to "come home" on consecutive nights.
(State's Ex. No. 20; Tr. 223).

Appellant's act of listing his grandfather's home as his address on his Driver's
License as well as the overnights he spent with Carbaugh do not prevent the
mobile home from being considered Appellant's residence. "A person [] may
have more than one residence at a time but only one domicile." *Id.* We note
that both Maxey and St. Clair referred to the mobile home as Appellant's
"home." (State's Ex. No. 20). Appellant declared under oath on his

Application for Appointed Counsel that he resided with Maxey in the mobile home with their daughter and Maxey's other children.

Reviewing the evidence in its entirety and accepting all reasonable inferences and credibility choices that tend to support the jury's verdict, we find that there were additional independent factors from which the jury could rationally conclude that Appellant had knowledge of the methamphetamine in the dresser drawer and shared the intent to control the drug with Maxey. *Bland v. State*, 4 P.3d 702, 713 (Okla. Crim. App. 2000).

The bulk of the drugs were found in a closed dresser drawer. The officers found 26.44 grams of crystalline methamphetamine inside clear plastic baggies and red colored zipit baggies. The baggies, foil, pipes, and scales were in a dresser drawer containing women's underwear, some dress socks and tube socks. However, the officers found a propane torch lying on the floor next to the bed. Methamphetamine users commonly use such torches to smoke methamphetamine. The officers could not think of any other reason for the torch to be in the floor next to the bed. This was the same bed in which the Officers found Appellant and Maxey partially clothed.

The officers also found .22 grams of powdered methamphetamine in Appellant's ball cap along with his billfold and cell phone. They found items associated with the manufacture of methamphetamine in Appellant's stock trailer including a Gatorade bottle converted into a hydrogen chloride gas generator. Testing of the substance found inside the container confirmed the presence of methamphetamine.

Though the 26.44 grams of methamphetamine was in a crystalline form most often associated with importation from Mexico and the methamphetamine and items found in Appellant's cap and stock trailer were more commonly associated with locally manufactured powdered methamphetamine, the jury could have rationally concluded that Appellant had been selling crystalline methamphetamine. Some of the text messages on Appellant's phone indicated attempts by Appellant and others to establish meeting opportunities. In the weeks before the officers' search, Appellant openly solicited the sale of methamphetamine by means of text message. On February 23rd, Appellant had offered to sell an eighth of an ounce of methamphetamine to an unidentified individual for $275.00. On February 24th, he had offered to sell an eighth of an ounce of methamphetamine for $280.00. (State's Ex. No. 20). This figure was the going rate for crystalline methamphetamine. This price was much too low for locally manufactured powdered methamphetamine as

the locally produced powder form was much more favored. (Tr. 133, 195-202).

The text messages from Appellant's phone showed the financial arrangement between Appellant and Maxey. Within the texts, Maxey complained to Appellant that he still had not given her any money and explained that she had recently given him $1,200.00. Although Appellant had paid court costs and bought food for the kids with some of the money, Maxey was upset because Appellant had gone out and spent the rest of the money having a good time despite the fact that he knew that she needed the money for a lawyer. The text messages further revealed that less than 24 hours before the officers searched the mobile home, Maxey had asked Appellant to check on some money that she was owed by another individual. Later that same day, Maxey asked Appellant to come with her to check out the quality of some "shit," *i.e.*, methamphetamine, to make sure that it was good. (State's Ex. No. 20). When Appellant failed to timely respond to her text, Maxey complained that it was "[a]bout par" for Appellant to turn off his phone when he knew that she did not "have no shit." (State's Ex. No. 20). Less than 24 hours later, the officers found Maxey and Appellant in bed together a few feet from the 26.44 grams of methamphetamine with the propane torch in [sic] the floor.

Taking the evidence in the light most favorable to the State, we find that any rationale [sic] trier of fact could have found that Appellant knowingly possessed twenty grams or more of methamphetamine beyond a reasonable doubt. This proposition is denied.

*Key*, No. F-2012-211, slip op. at 4-10 (footnote omitted).[1]

In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the

---

[1] Parallel citations in the OCCA's Opinion are omitted in this Opinion and Order.

sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)), *cert. denied*, 498 U.S. 904 (1990).

"[W]here a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA adds an additional degree of deference, and the question becomes whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citations and internal quotation marks omitted), *cert. denied*, 553 U.S. 1079 (2008). This standard is called "deference squared." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012) (quoting *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007)). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [this court] owe[s] deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is

persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." *Id.* (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

Here, the Court finds there is no question that a rational trier of fact could have found beyond a reasonable doubt that Petitioner knowingly possessed twenty (20) grams or more of methamphetamine to satisfy the elements of Trafficking in Methamphetamine. *See* OUJI-CR(2d) 6-13 (Dkt. 11-9 at 100). The Court further finds the OCCA's determination of this claim did not result in a decision that was contrary to, or involved an unreasonable application of Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). The Court also finds the OCCA's decision was not based on an unreasonable determination of the facts presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(2). Ground I of this habeas petition is meritless.

**Ground II: Excessive Sentence**

Petitioner claims in Ground II that his mandatory sentence of life imprisonment without the possibility of parole for Trafficking in Methamphetamine (Count 1), after two drug-related convictions, is excessive and violates the federal and state prohibitions against cruel and unusual punishment.

Respondent asserts the sentence was within the statutory range, and the OCCA's determination on this issue was not contrary to, or an unreasonable application of Supreme Court law. The OCCA discussed the claim as follows:

In his second proposition of error, Appellant challenges his mandatory

sentence of life without the possibility of parole in Count I. Appellant contends that his sentence is excessive.

In considering whether a sentence is excessive, this Court looks to whether the punishment is within the statutory range and if it is, whether, under all the facts and circumstances of the case it is so excessive as to shock the conscience of the Court. *Freeman v. State*, 876 P.2d 926, 930 (Okla. Crim. App. 1994). Whether a sentence is excessive must be determined by a study of all the facts and circumstances of each case. *Rea v. State*, 34 P.3d 148, 149 (Okla. Crim. App. 2001); *Battenfield v. State*, 816 P.2d 555, 564 (Okla. Crim. App. 1991); *Rogers v. State*, 507 P.2d 589, 590 (Okla. Crim. App. 1973).

The Oklahoma Legislature has set the mandatory penalty for trafficking in illegal drugs after former conviction of two or more violations of the uniform controlled dangerous substances act at imprisonment for life without the possibility of parole. Okla. Stat. tit. 63, § 2-415(D)(3) (Supp. 2007). Appellant concedes that his sentence falls within this statutory range of punishment but contends that his sentence is excessive because this sentencing scheme is unconstitutional. He argues that a mandatory sentence of imprisonment for life without the possibility of parole violates both Federal and State constitutional prohibitions against cruel and unusual punishment as it is disproportionate to the crime committed.

This Court has previously addressed the constitutionality of this sentencing scheme. In *Dodd v. State*, 879 P.2d 822 (Okla. Crim. App. 1994), this Court found that a mandatory sentence of imprisonment for life without the possibility of parole was not disproportionate to the offense of trafficking in illegal drugs after former conviction of two felony drug offenses and did not constitute cruel and unusual punishment. *Id.*, 879 P.2d at 826-827. In *Ott v. State*, 967 P.2d 472, 477 (Okla. Crim. App. 1998), this Court determined that a mandatory sentence of life without the possibility of parole was constitutional as it applied to the offense of trafficking in methamphetamine after former conviction of two drug-related convictions. In *Dufries v. State*, 133 P.3d 887, 891 (Okla. Crim. App. 2006), we found that both *Dodd* and *Ott* controlled on this issue. Most recently, in *Randolph v. State*, 231 P.3d 672, 683 (Okla. Crim. App. 2010), we again upheld this sentencing scheme under both Article II, section 9 of the Oklahoma Constitution and the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

Appellant argues that *Dodd* should be overruled because a mandatory sentence

of imprisonment for life without the possibility of parole usurps the sentencing discretion of the jury, the sentencing court, and even this Court. However, neither the jury nor a sentencing court has the discretion to define punishment. Instead, the substantive power to prescribe crimes and determine punishments is vested with the legislature. *United States v. Dixon*, 509 U.S. 688, 746 (1993); *Missouri v. Hunter*, 459 U.S. 359 (1983) ("legislatures, not courts, prescribe the scope of punishment"). The sentencing body (judge or jury) may only impose a sentence authorized by law. *Rea*, 34 P.3d at 149; *King v. State*, 29 P.3d 1089, 1090-91 (Okla. Crim. App. 2001). Therefore, we adhere to *Dodd* and find that Appellant's sentence is neither cruel nor unusual in the sense prohibited by our constitutions.

Appellant contends that his sentence is excessive in light of his age and the sentence that his co-defendant received. It appears from the record that Appellant's co-defendant, Lori Maxey, entered a plea to a lesser offense pursuant to a plea agreement and was sentenced to imprisonment for ten years all suspended. The sole fact that a co-defendant or an accomplice received a lesser sentence does not make the sentence excessive. *Burnett v. State*, 760 P.2d 825, 829 (Okla. Crim. App. 1988); *Lamb v. State*, 756 P.2d 1236, 1238 (Okla. Crim. App. 1988). Instead, we determine whether Appellant's punishment is excessive by a study of all of the facts and circumstances of the case. *Id.* Appellant committed the present offense at 30 years of age. At that time, he had acquired 6 separate former felony convictions. Specifically, he committed the present offense after former conviction of Manufacturing a Controlled Dangerous Substance, Possessing Material with Intent to Manufacture in District Court of Bryan Case No. CF-06-451 and Endeavoring to Manufacture a Controlled Dangerous Substance, Possession of Material with Intent to Manufacture in District Court of Bryan County Case No. CF-06-573. Although we find Appellant's sentence harsh, it is not so excessive as to shock the conscience of the Court.

Appellant further asks this Court to recognize the right to individualized sentencing in non-capital felony cases. As Appellant has failed to provide any argument or authority for this request we find that the issue is waived pursuant to Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2013). *Harmon v. State*, 248 P.3d 918, 946 (Okla. Crim. App. 2011). This proposition is denied.

*Key*, slip op. at 10-13.

As shown above, the OCCA thoroughly addressed Petitioner's excessive sentence

claim and determined the sentence was within the statutory limits, and the sentence did not violate the federal or state constitutional prohibitions against cruel or unusual punishment.

In *Dennis v. Poppel*, 222 F.3d 1245 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001), the Tenth Circuit Court of Appeals addressed the issue:

> We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988).

*Dennis*, 222 F.3d at 1258. Here, Petitioner's sentence clearly was within the statutory range of permissible punishment under Oklahoma law.

To the extent that Petitioner challenges his sentence on state constitutional grounds, a state court's interpretation of state sentencing statutes is generally not subject to federal habeas review. *See Dennis*, 222 F.3d at 1257-58 (holding that federal courts "are bound to accept the Oklahoma court's construction of state statutes" and application of a state sentencing statute "is a question of state law, not cognizable on federal habeas review").

As for Petitioner's claim that his sentence violates the federal constitutional prohibition against cruel and unusual punishment:

> "The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences." *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) (quotation marks and alterations omitted) (citing *Ewing v. California*, 538 U.S. 11, 20 (2003)). Under this narrow principle, the Constitution does not require the crime and the sentence to be strictly proportional. *Id.* Instead, "it forbids only extreme sentences that are 'grossly

disproportionate' to the crime." *Ewing*, 538 U.S. at 20 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. *See United States v. Hughes*, 901 F.2d 830, 832 (10th Cir. 1990).

*United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006), *cert. denied*, 549 U.S. 1063 (2006). Petitioner's sentence, which is within the statutory sentencing limit, does not violate the federal Constitution.

In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.* at 465. This ruling, however, has not been extended to include adult defendants who have been sentenced to life without parole under a mandatory sentencing scheme. "If the *Miller* ruling is to be expanded, it is the province of the Supreme Court to do so." *United States v. Williston*, 862 F.3d 1023, 1039 (10th Cir. 2017) (citation omitted).

Petitioner possessed more than 25 grams of methamphetamine after he had been convicted of two previous drug felonies. Consequently, he was lawfully subject to a sentence of life without the possibility of parole under Oklahoma law. While this sentence is harsh, it is not cruel or unusual. Instead, it is a reasonable response to Petitioner's repeated criminal conduct and his inability to conform "to the norms of society as established by its criminal law. *Ewing*, 538 U.S. at 29 (noting that the states have a legitimate interest in dealing in a "harsher manner" with those who repeatedly offend their laws).

After careful consideration of the circumstances of this case, this Court finds the

15

OCCA's decision of this claim was not contrary to, or an unreasonable application of, Supreme Court law. Therefore, Petitioner's challenge to his sentence for Count 1 is denied.

**Ground III: Sufficiency of the Evidence (Count 2)**

Petitioner alleges in Ground III that the evidence was insufficient to sustain his conviction on Count 2 for Possession of a Firearm, After Former Conviction of a Felony. He raised this issue on direct appeal, and the OCCA denied it on the merits:

> In his third proposition of error, Appellant challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm after former conviction of a felony. We review to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Easlick*, 90 P.3d at 559; *Spuehler*, 709 P.2d at 203-204. The requisite elements of the offense of unlawful possession of a firearm after former felony conviction are:
>
> > First, knowingly and willfully;
> >
> > Second, possessing or having at the place where the defendant resides;
> >
> > Third, any pistol/imitation or homemade pistol / machine gun / sawed-off shotgun or rifle / or other dangerous or deadly firearm;
> >
> > Fourth, the defendant was convicted of a particular felony in a particular court on a particular date.
>
> *Harmon v. State*, 122 P.3d 861, 864; Inst. No. 6-39, OUJI-CR(2d) (Supp. 2012).
>
> Appellant does not dispute that the officers found a pistol in the bedroom closet or that he was convicted of the felony alleged by the State. Instead, he contests the elements of (1) "knowingly and willfully" and (2) "possessing or having at the place where [he] resides."
>
> Knowledge is usually, if not always, proven by circumstantial evidence. *Glenn v. State*, 749 P.2d 121, 126 (Okla. Crim. App. 1988). "Knowledge may

be inferred from the facts and circumstances surrounding the case." *Payne v. State*, 744 P.2d 196, 202 (Okla. Crim. App. 1987).

Taking the evidence in the light most favorable to the State, we find that any rational trier of fact could have found that Appellant knowingly had the pistol at a place in which he resides beyond a reasonable doubt. We determined in Proposition One that the jury could have reasonably concluded that Appellant maintained the mobile home as a residence and jointly possessed the 26.44 grams of crystalline methamphetamine with Maxey.

The facts and circumstances surrounding the case permitted the inference that Appellant had knowledge of the pistol. The pistol was not hidden. It was discovered lying on the top shelf of the closet in the bedroom in which the officers found Appellant. The door to the closet was wide open. The black semi-automatic pistol was loaded. It was lying in a completely empty space on the white wirerack shelf. Nothing was in front of or on top of the pistol. Officers also found a rifle inside a brown rifle case in the closet. Although there is no evidence that the rifle was sawed-off, its noticeable presence and placement drew attention to the pistol. The rifle case was clearly observable to anyone inside the bedroom and was situated on top of a metal basket so that it was pressed against the wall. The end of the rifle barrel was pressed against the wall approximately one foot above the pistol.

There was also evidence from which the jury could rationally infer that Appellant was familiar with the contents of the mobile home. Maxey and St. Clair referred to the mobile home as Appellant's "home." (State's Ex. No. 20; Tr. 223). Appellant verified under oath that he resided at this address on the Application for Appointed Counsel. Maxey texted Appellant on one occasion and asked "where the water jug" and asked if Appellant was taking her son to baseball practice. (State's Ex. No. 20). The Gatorade bottle that had been converted into a hydrogen chloride gas generator with black tubing and electrical tape which was found in Appellant's stock trailer matched the Gatorade bottle, tubing and electrical tape the officers discovered in the Jeep Grand Cherokee. The keys to the Cherokee were found inside the mobile home.

Taking the evidence in the light most favorable to the State, we find that any rationale [sic] trier of fact could have found the essential elements of the offense of unlawful possession of a firearm after former felony conviction beyond a reasonable doubt. This proposition is denied.

*Key*, slip op. at 13-16.

Petitioner has made no attempt to rebut the factual findings made by the OCCA in its Opinion, and he has failed to show the OCCA's decision was contrary to, or an unreasonable application of, *Jackson*. Therefore, this Court finds he has failed to satisfy his burden under 28 U.S.C. § 2254(d).

The record shows that Petitioner did not dispute at trial or on direct appeal that he had a prior felony or that a pistol and rifle were found in the bedroom closet. He instead argued the evidence was insufficient to prove he knew about the guns or that he lived at the residence. As noted by the OCCA in its detailed Order, however, the evidence clearly established beyond a reasonable doubt that Petitioner feloniously possessed a firearm. Therefore, the jury's decision in this case was not unreasonable, and the OCCA's determination of this claim was consistent with *Jackson*. In addition, the OCCA's decision was not based on an unreasonable determination of the facts. This ground for habeas corpus relief fails.

**Ground IV: Denial of Mistrial**

In Ground IV Petitioner alleges the trial court erred in refusing to grant his request for a mistrial after his counsel determined he had misstated the proposed defense evidence during opening statements. Respondent asserts this claim must be denied, because it has no basis for federal habeas corpus relief. The OCCA rejected the claim on direct appeal:

> In his fourth proposition of error, Appellant claims that the trial court erred when it failed to grant his request for a mistrial based upon his discovery that listed defense witness, Lori Maxey, would not testify consistent with his

comments in opening argument.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Malaske v. State*, 89 P.3d 1116, 1119 (Okla. Crim. App. 2004); *Knighton v. State*, 912 P.2d 878, 894 (Okla. Crim. App. 1996) ("decision to grant a mistrial at defense request is left to the sound discretion of the trial court."). An abuse of discretion has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. *Marshall v. State*, 232 P.3d 467, 474 (Okla. Crim. App. 2010); *Sanchez v. State*, 223 P.3d 980, 1001 (Okla. Crim. App. 2009), *cert. denied*, 562 U.S. 931 (2010); *Love v. State*, 960 P.2d 368, 369 (Okla. Crim. App. (1998). An abuse of discretion has also been described as any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. *Neloms v. State*, 274 P.3d 161, 170 (Okla. Crim. App. 2012). "A mistrial is an appropriate remedy when an event at trial results in a miscarriage of justice or constitutes an irreparable and substantial violation of an accused's constitutional or statutory right." *Knighton*, 912 P.2d at 894.

Turning to the present case, we find that the trial court did not abuse its discretion. Appellant commented in his opening statement:

> Now, you are going to hear from Lori Maxes [sic], who is going to take responsibility for the dope that was found inside of her dresser drawer. Lori Maxey will testify that it was her methamphetamine inside the dresser drawer. They are going to have no person who can actually give you any evidence that Sammy Key knew it was there, was a participant in the endeavor, had anything to do with it . . . .

(Tr. 103). Appellant also informed the jury that:

> You are going to hear from Charla Carbaugh that is going to testify to the fact that Sammy Key did not live there but lived with her over in the Cartwright area at the time of the issuance and the execution of this search warrant. He just happened to be there . . . the day that this was going on.

> * * *

> [I]n these text messages that you are going to see from David

Cathey, that there are going to be several text messages from Lori Maxey to Sammy Key . . . She is going to be begging him to come back. Begging him to stay with [sic] him. Begging him to have this relationship that she wanted to have with him.

* * *

And when you think about all of the evidence and you find out all of the evidence is actually more of Lori Maxey is responsible for this, not Sammy Key, you are going to have to find Sammy Key not guilty and that is what we are going to ask for at the end of this trial.

(Tr. 104-05). Following an afternoon recess, Appellant requested a mistrial stating:

Lori Maxey last week told me specifically that the methamphetamine inside of the drawer was hers. She [told] me that and I asked her on several occasions just to tell me the truth. Today she comes up here as a witness. I have already told the jury that she intends to say that the items in the drawer were, in fact, hers. But that, unfortunately is not true. Today she wants to testify that it is theirs or ours, meaning both hers and Sammy's . . . .

(Tr. 224-25). The trial court denied Appellant's motion.

Reviewing the record in the present case, we find that the trial court's denial of Appellant's mistrial request was not clearly against the logic and effect of the facts presented. Opening statements by the attorneys are not evidence. *Young v. State*, 12 P.3d 20, 36 (Okla. Crim. App. 2000). Instead, the purpose of an opening statement is to inform the jury of the evidence the attorneys expect to present during the trial. *Id.* This Court has recognized that, despite good faith efforts, expected testimony can evaporate during the presentation of the case. *Id.*; *Ledbetter v. State*, 933 P.2d 880, 890 (Okla. Crim. App. 1997).

Appellant's trial occurred over the course of two days. Jury selection, opening argument and admission of all first stage evidence occurred during the first day of trial. Prior to opening statements, the trial court instructed the jury both that "[n]o statements or argument by the attorneys is to be construed as evidence"

and "[o]pening statements are not evidence . . . ." (Tr. 91, 95).

Although Maxey did not testify at trial, the record reveals that the great majority of the evidence that Appellant recited to the jury was actually introduced at trial. The State introduced the text messages through David Cathey as Appellant stated. Appellant called Charla Carbaugh to testify.

In the closing instructions, the trial court instructed the jury to solely base its decision on the evidence introduced while the court was in session and also gave the jury the definition of "evidence" which necessarily excluded the argument of counsel. *See* Inst. Nos. 9-1, 10-5, OUJI-CR (2d) (Supp. 2012). Neither party mentioned in closing argument the fact that Maxey did not testify or any inference therefrom. The prosecutor did not comment on Appellant's failure to present the evidence outlined in his opening statement.

Based upon this record, we find that Appellant's comments concerning Maxey in opening statements did not result in a miscarriage of justice or an irreparable and substantial violation of Appellant's constitutional or statutory rights. Thus, the trial court did not abuse its discretion in denying Appellant's request for mistrial. This proposition is denied.

*Key*, slip op. at 16-19.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

Under Oklahoma law, "the decision to grant a mistrial at defense request is left to the sound discretion of the trial court." *Knighton v. State*, 912 P.2d 878, 894 (Okla. Crim. App. 1996) (citations omitted), *cert. denied*, 519 U.S. 841 (1996). The OCCA reviewed Petitioner's claim of trial error under Oklahoma's abuse of discretion standard. Such claims

of state procedural or trial error do not present cognizable federal questions in a habeas corpus action, *Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047 (1980), unless the petitioner demonstrates the error "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process," *Hooks. v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)). *See, e.g., Gonzales v. Tafoya*, 515 F.3d 1097, 1126-27 (10th Cir. 2008) ("In conducting our inquiry, we defer to the state court's interpretations of state law."). *See also Brown v. Patton*, No. 11-CV-368-GKF-PJC, 2014 WL 4825252, at *10, (N.D. Okla. Sept. 26, 2014) (unpublished) (denying habeas relief after determining "the trial judge's refusal to declare a mistrial was based on state law and did not result in constitutional error").

In this case, defense counsel mentioned Ms. Maxey only briefly in his opening statement. Although she did not testify, defense counsel was able to present Petitioner's defense that the drugs in the drawer did not belong to him. Defense counsel reinforced this point by saying the drugs were in a "women's underwear" drawer, that the affidavit for a search warrant stated the home was "Lori Maxey's place," and by presenting Charla Carbaugh's testimony that Petitioner had lived with her since March 2010 (Tr. I, 145-46, 212, 243-44). While unsuccessful, the jury heard evidence concerning whether Petitioner had knowledge of the crystallized methamphetamine found in the drawer.

After careful review, this Court finds Petitioner has not shown that the trial court's decision and the OCCA's Order affirming that decision were so fundamentally unfair that

he was denied due process of law.  This ground for habeas relief is denied.

**Ground VI:  Jury Instruction**[2]

Petitioner alleges in Ground VI that the trial court committed plain error in its failure to instruct the jury with OUJI-CR (2d) 9-6A, which would have advised the jury to give separate consideration to each of the three counts.  The instruction states:

> You must give separate consideration for each charge in the case.  The defendant is entitled to have his/her case decided on the basis of the evidence and the law which is applicable to each charge.  The fact that you return a verdict of guilty or not guilty for one charge should not, in any way, affect your verdict on the other charge.

OUJI-CR (2d) 9-6A.

The note on the use of this instruction states, "This instruction should be given if two or more charges against the same defendant are tried together.  This Instruction is not required unless any party has made a timely request for it.  *See Taylor v. State*, 2011 OK CR 8, ¶¶ 14-18, 248 P.3d 362."  Petitioner claims trial counsel failed to request the instruction and did not object to its absence.

The OCCA denied relief on this issue:

> In his sixth proposition of error, Appellant challenges the trial court's omission to *sua sponte* instruct the jury with Inst. No. 9-6A, OUJI-CR (2d) (Supp. 2010), concerning separate consideration for each charge.  Appellant's concession that he waived appellate review of this claim for all but plain error by failing to either request the instruction at trial or object to its absence is well taken.  *Eizember v. State*, 164 P.3d 208, 236 (Okla Crim. App. 2007).  We review Appellant's claim for plain error under the test set forth in *Simpson v. State*, 876 P.2d 690 (Okla. Crim. App. 1994).

---

[2] Ground V and Ground VI are discussed in reverse order.

To be entitled to relief under the plain error doctrine, [an appellant] must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *See Simpson*, 876 P.2d at 694-95, 698; Okla. Stat. tit. 20 § 3001.1 (2001). If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Id.* at 701 (citing *United States v. Olano*, 507 U.S. 725, 736 (1993); Okla. Stat. tit. 20, § 3001.1 (2001).

*Hogan v . State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006).

This Court has not required that a "separate consideration" instruction be given in trials of multiple offenses, absent a timely request. *Taylor v. State*, 248 P.3d 362, 370 (Okla. Crim. App. 2011). Therefore, the absence of such an instruction does not constitute plain error. *Id.* (citing *Shietze v. State*, 724 P.2d 262, 264 (Okla. Crim. App. 1986)) (absent timely request, omission of separate consideration of evidence instruction did not constitute fundamental error). As such, we find that Appellant has not shown the existence of an actual error in the present case. *Hogan*, 139 P.3d at 923. Plain error did not occur. This proposition is denied.

*Key*, slip op. at 19-20.

Respondent asserts this claim does not present a basis for habeas corpus relief. "Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006) (citations omitted).

Here, the OCCA reviewed this claim under the plain error doctrine. The Tenth Circuit has found that "Oklahoma's plain-error test is rooted in due process." *Thornburg v. Mullin*,

422 F.3d 1113, 1124 (10th Cir. 2005) (quoting *Estelle*, 502 U.S. at 68).

> We see no practical distinction between the [OCCA's] formulations of plain error . . . and the federal due-process test, which requires reversal when error "so infused the trial with unfairness as to deny due process of law." *Estelle*, 502 U.S. at 75. Because the OCCA applied the same test we apply to determine whether there has been a due-process violation, we must defer to its ruling unless it "unreasonably appli[ed]" that test. 28 U.S.C. § 2254(d).

*Thornburg*, 422 F.3d at 1123.

This Court finds the record demonstrates that the OCCA did not unreasonably apply the due process test in denying Petitioner's claim. Petitioner did not request OUJI-CR (2d) 9-6A, and the trial court did not *sua sponte* give the instruction to the jury. The instruction was not required, and no prejudice can be shown, because the jury was instructed on the separate elements of each crime and that it was their duty to determine Petitioner's guilt on each count. *See Taylor*, 248 P.3d at 370 (finding no plain error as a result of the trial court's failure to give a type of 9-6A instruction and noting that the "trial court's instructions properly required the jury to find that the State proved the elements of each charged crime beyond a reasonable doubt"). Therefore, Petitioner has not met his burden of demonstrating that the absence of Instruction 9-6A was so grossly prejudicial that it fatally infected the fairness of the trial. This ground for relief is meritless.

**Ground V: Ineffective Assistance of Trial Counsel**

Petitioner alleges trial counsel made critical errors warranting reversal of his convictions. He asserts counsel spoke with Lori Maxey prior to trial about her potential trial testimony. Ms. Maxey advised counsel that she would testify that the crystal

methamphetamine found in the drawer was hers and not Petitioner's. Counsel, however, failed to memorialize Ms. Maxey's proposed testimony by affidavit or recording, and there was no witness to counsel's conversations with her. Petitioner claims this issue was compounded by trial counsel's opening statement to the jury that Ms. Maxey would appear as a witness to testify that the crystal methamphetamine belonged to her and that Petitioner had nothing to do with it.

During the trial proceedings, defense counsel contacted Ms. Maxey and learned she had changed her story to say she and Petitioner were equally responsible for the crystal methamphetamine in the drawer. Petitioner contends his request for a mistrial was denied because of counsel's failure to memorialize Ms. Maxey's proposed testimony prior to trial. Petitioner also claims Ms. Maxey's failure to testify at trial resulted in a total loss of credibility of the defense in the eyes of the jury.

Petitioner next alleges trial counsel was ineffective in failing to request Instruction No. 9-6A OUJI-CR (2d) (2010), which advises the jury to consider each of the three counts separately in their deliberations. Petitioner contends this jury instruction was necessary and appropriate, and the failure to give this instruction harmed Petitioner.

Petitioner further complains that trial counsel was ineffective in stipulating to Petitioner's prior felony convictions, thus guaranteeing a sentence of life without the possibility of parole for the trafficking conviction. He contends nothing in the record established Petitioner's agreement with the stipulation, and the stipulation allegedly prevented the jury from having any flexibility in the sentence.

In a thorough discussion, the OCCA found no merit in Petitioner's claim of ineffective assistance of trial counsel:

> In his fifth proposition of error, Appellant contends that he was prejudiced by ineffective assistance of counsel. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *Mitchell v. State*, 20 P.3d 160, 190 (2011). The *Strickland* test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense. *Bland*, 4 P.3d at 730-31 (*citing Strickland,* 466 U.S. at 687). Unless the appellant makes both showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Ryder v. State,* 83 P.3d 856, 875 (quoting *Strickland*, 466 U.S. at 687).

> The Court begins its analysis with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Appellant must overcome this presumption and demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* This Court has stated that the issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. *Mitchell*, 20 P.3d at 190.

> When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Phillips v. State*, 989 P.2d 1017, 1043 (citing *Strickland*, 466 U.S. at 697). To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors. *Bland*, 4 P.3d at 730-31. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

> First, Appellant challenges defense counsel's pretrial interview of Lori Maxey and his comments concerning her expected testimony in opening statements. Appellant contends that counsel's failure to memorialize Lori Maxey's pre-trial statements to him through writing, recording or the presence of a third party was unreasonable under prevailing professional norms. He further contends that mentioning Maxey's expected testimony in opening argument without memorializing her pretrial statements constituted constitutionally deficient performance.

The record reflects that Defense counsel did not memorialize Maxey's pretrial statement through any writing, recording or the presence of any third party. Counsel spoke to Maxey by phone on two or three occasions. He then relayed to the jury in opening statements that Maxey would take responsibility for the drugs in the dresser drawer. However, counsel learned during the afternoon recess that Maxey's oral statements were "unfortunately, [ ] not true." (Tr. 225). Instead, Maxey indicated that the methamphetamine belonged to both Appellant and her. (Tr. 225). Based upon this fact, defense counsel chose not to call Maxey as a witness and moved for a mistrial.

Although the best practice would be for counsel to memorialize the witness' pretrial statements, we find that Appellant has not demonstrated that defense counsel's omission to memorialize Maxey's statements was unreasonable under prevailing professional norms. *Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from the best practices or most common custom."). Nothing in the record suggests that defense counsel would have been able to get Maxey to give a formal statement. It was permissible for Maxey to testify at trial in the absence of a formalized statement. *See* Okla. Stat. tit. 12, § 2002(B)(1)(a). Counsel's failure to memorialize Maxey's pretrial statements would not prevent impeachment of Maxey at trial had she testified. An oral statement may qualify as a prior inconsistent statement under Okla. Stat. tit. 12, § 2613. *See Wimberly v. State*, 698 P.2d 27, 31 (Okla. Crim. App. 1985).

Appellant has also failed to demonstrate that counsel's comments in opening statement were unreasonable under prevailing professional norms. To the contrary, it was reasonable for counsel to rely upon Maxey's oral statements based upon Maxey's relationship with Appellant. Appellant and Maxey had a young daughter together. Maxey clearly cared very deeply for Appellant. At the time of trial, Maxey was no longer in jeopardy over the methamphetamine. She had entered a plea to a lesser offense pursuant to a plea agreement and was on a suspended sentence.

Once having received Maxey's oral statements, counsel had every reason to believe that Maxey would testify consistent with her statements to defense counsel. Defense counsel had asked Maxey "on several occasions just to tell [ ] the truth." (Tr. 224). It was not until the afternoon of the first day of trial (after opening statements) that Maxey told defense counsel differently.

We further find that Appellant has not shown that counsel's failure to

memorialize Maxey's pretrial statements and counsel's comments in opening statements prejudiced him. Counsel's method of pretrial interview did not result in the inability to impeach the witness or the loss of any exculpatory testimony. We determined in Proposition Four that counsel's comments in opening argument did not result in a miscarriage of justice or constitute an irreparable and substantial violation of Appellant's constitutional or statutory rights. As the trial court properly instructed the jury that opening statements are not evidence, defined what constitutes evidence, and instructed the jury to only consider the evidence introduced while the court was in session, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's actions.

Second, Appellant challenges trial counsel's failure to request that the trial court instruct the jury with Instruction No. 9-6A, OUJI-CR (2d) (Supp. 2010). In Proposition Six, we determined that the trial court's omission of this instruction did not constitute plain error. The trial court's instructions properly required the jury to find that the State proved the elements of each charged crime beyond a reasonable doubt. *Taylor*, 248 P.3d at 370. As such, Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to request the instruction. *Glossip v. State*, 157 P.3d 143, 161 (Okla. Crim. App. 2007).

Third, Appellant challenges trial counsel's stipulation to the prior felony convictions listed in the Supplemental Information. We find that Appellant has not demonstrated that defense counsel's performance was unreasonable under prevailing professional norms.

The record reflects that the parties had an off the record discussion with the trial court about stipulating to the prior felony convictions if Appellant was found guilty in the first stage of the trial. Thereafter, the second and third stage proceedings were combined into one stage. After the jury returned its verdicts as to the first stage, the State read the Information and stated Appellant's plea of not guilty as to the offense of unlawful possession of a firearm after former felony conviction, as set forth in Count II. After both parties waived opening argument, the trial court excused the jury from the courtroom and made a record as to the stipulation in open court. Defense counsel stipulated to Appellant's former convictions as listed in the Supplemental Information. Appellant was present during this proceeding but did not speak.

"[A]n appellant cannot claim he did not know his attorney was going to

stipulate to his prior convictions when the record reflects appellant's presence in the courtroom during the stipulation's delivery to the trial judge and its placement in the record." *Scott v. State*, 751 P.2d 758, 760 (Okla. Crim. App. 1988); *Moore v. State*, 714 P.2d 599, 601 (Okla. Crim. App. 1986). As Appellant was present in the courtroom during defense counsel's delivery of the stipulation, we find that defense counsel's performance was not constitutionally deficient.

We further find that Appellant has not demonstrated that he was prejudiced by defense counsel's stipulation to the prior convictions. Appellant has not shown that defense counsel had any reasonable basis for disputing the prior felony convictions. All of the convictions arose within the very courthouse in which Appellant was on trial. Based upon this record, we find that there is not a reasonable probability that the outcome of the trial would have been different absent defense counsel's stipulation to Appellant's prior felony convictions. This proposition is denied.

*Key*, slip op. at 20-26 (internal footnotes omitted).

Respondent alleges the OCCA's decision denying Petitioner's ineffective assistance of counsel claim was neither contrary to, or an unreasonable application of, Supreme Court law, and the decision was not an unreasonable determination of the facts.

"There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989).

To prevail on a claim of ineffective assistance of counsel, the accused must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the accused must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id*. at

689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. On habeas review, however, the Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Instead, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Id.*

The Supreme Court has since expanded the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original).

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem,

review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 778 (internal citations and quotation marks omitted).

On direct appeal Petitioner claimed his counsel was ineffective for failing to "pin Maxey down concerning her testimony" and for mentioning Ms. Maxey during opening statements (Dkt. 10-1 at 42). The OCCA noted, however, that there is no indication that Ms. Maxey was willing to incriminate herself at trial. As Petitioner's co-defendant with a plea agreement, there was no guarantee that Maxey would take responsibility for their joint actions. Defense counsel may have erroneously referenced her anticipated testimony during opening statements, but given the other evidence and the jury instructions, there is no reasonable probability the results of the trial would have been different without counsel's statement. Therefore, Petitioner's claim of ineffective assistance of counsel on this basis is meritless.

Petitioner also claimed on direct appeal that counsel was ineffective for failing to request Instruction 9-6A which instructs the jury to consider each count separately. As discussed in Ground VI of this petition, Petitioner was not denied a fair trial because of the lack of this instruction.

Defense counsel is not ineffective for failing to raise a meritless objection. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective

for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance."). Furthermore, Petitioner has shown no prejudice as a result of the absence of the jury instruction. *See Allen v. Mullin*, 368 F.3d 1220, 1246 (10th Cir. 2004) (stating that if a petitioner demonstrates no prejudice as a result of claimed ineffective assistance of counsel, then claim must fail).

Petitioner also complained on direct appeal that counsel was ineffective in stipulating to his prior convictions during the second stage of trial. He asserted the stipulation was not a reasonable strategy, because it guaranteed him a sentence of life without the possibility of parole for trafficking.

As noted by the OCCA, there is no indication in the record that defense counsel had any reasonable basis for disputing the State's evidence of Petitioner's prior felony convictions. *See Key*, slip op. at 25. Therefore, the jury's verdict would have been the same regardless of whether the defense stipulated or not. Under these circumstances, Petitioner cannot show counsel's strategy was improper or constituted ineffective assistance of counsel.

After careful review, the Court finds the OCCA's determination of Petitioner's ineffective assistance of counsel claim was not based on an unreasonable determination of the facts, and the decision was not contrary to, or an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Ground V of the petition is denied.

## Ground VII:  Jury Questions

Petitioner alleges in Ground VII that the trial court erred by failing to follow the

33

statutorily-mandated procedures when the jury had three questions during the First Stage and the Second Stage of trial. Respondent asserts this claim presents an error of state law that is not cognizable on federal habeas corpus review. The OCCA rejected this claim in Petitioner's direct appeal:

> In his seventh proposition of error, Appellant complains that the trial court did not follow the procedures outlined in Okla. Stat. tit. 22, § 894 (2011) when answering the jury's questions. Section 894 essentially requires that when the jury has a question on a point of law, they are to be brought into court, and with counsel for both sides present, informed of the law. *Grayson v. State*, 687 P.2d 747, 750 (Okla. Crim. App. 1984). "To avoid any error, trial courts should follow the dictates of § 894 or obtain waivers from the parties." *Douglas v. State*, 951 P.2d 651, 679 (Okla. Crim. App. 1997).
>
> The record before this Court shows the trial court did not summon the jury back into the courtroom but sent the jury only its written answers to the jury's questions. We cannot ascertain from the record whether Appellant waived the statutory procedure under § 894. Appellant recounted the jury's second question as proof that he did not deserve a sentence of life without the possibility of parole during argument at sentencing. However, there is no record of a hearing with Appellant or his counsel. There is no record of a waiver in the transcript. The trial court's answers to the jury's questions are not signed by either Appellant or defense counsel. As there is no record of compliance with § 894, we find that the trial court erred by answering the jury's questions without notice to counsel and the presumption of prejudice arises. *Smith v. State*, 157 P.3d 1155, 1172 (Okla. Crim. App. 2007) (district court erred by answering jury's questions without notice to counsel); *Grayson*, 687 P.2d at 750 (holding that answering jury's questions without following the statutory procedure creates presumption of prejudice).
>
> Nonetheless, the presumption of prejudice may be overcome on appeal if the record shows no prejudice to Appellant occurred. *Id.*; *Grayson*, 687 P.2d at 750; *Douglas*, 951 P.2d at 679. This Court has found that the presumption of prejudice is overcome where the trial court's responses were entirely correct, limited in scope and essentially the same as would have been given had the statute been strictly followed. *Grayson*, 687 P.2d at 750. Applying this analysis to the present case, we find that Appellant was not prejudiced when the trial court answered the jury's questions without following the statutory

procedure.

In the first note, the jury asked whether they had to vote on the instructed lesser offenses of trafficking methamphetamine if they found Appellant guilty of the charged offense. The trial court's response that the jury need not consider the lesser offenses if they found Appellant guilty of the charged offense is entirely correct. This Court has determined that the jury is not required to unanimously acquit a defendant on the charged offense before it can consider his guilt on any lesser offense. *Marquez-Burrola v. State*, 157 P.3d 749, 758 (Okla. Crim. App. 2007). However, the jury is not required to consider lesser offenses if they do not have any reasonable doubt of the defendant's guilt of the charged offense. *See* Inst. No. 10-24, OUJI-CR (2d) (Supp. 2012). As the trial court's response was entirely correct and limited in scope, we find no prejudice from the trial court's failure to strictly follow the statutory procedure.

In the second note the jury asked how long it would be before Appellant was eligible for parole under a life sentence. As the offense of trafficking in methamphetamine is not subject to the 85% Rule, the trial court's response that it would be inappropriate for the court to give any further instructions because the court did not have access to this information was entirely correct. *Watts v. State*, 194 P.3d 133, 137 (Okla. Crim. App. 2008) (holding that trial courts should not instruct the jury as to pardon, parole, or earned credits absent applicability of the 85% Rule). As the trial court's response was entirely correct and limited in scope, we find no prejudice from the trial court's failure to strictly follow the statutory procedure.

In the third note, the jury asked where the money from any fine assessed would go. The trial court answered that this was not an issue for the jury to consider. Again, the trial court's answer was entirely correct and limited in scope. The trial court's responses were essentially the same as would have been given had the statute been strictly followed and we find no prejudice from the trial court's failure -to strictly follow the statutory procedure in the present case. This proposition is denied.

*Key*, slip op. at 26-29 (internal footnotes omitted).

Because Petitioner's claim is grounded in state law error, it is not cognizable in this federal habeas action, unless he demonstrates error so prejudicial that it deprived him of a

fair trial and due process of law.  *See Nguyen v. State*, 131 F.3d 1340, 1357 (10th Cir. 1997), *cert. denied*, 525 U.S. 852 (1998).  The Court finds Petitioner has failed to make this showing.  He has set forth no errors in the trial judges's written responses to the jury's questions, nor has he shown the outcome of his trial proceedings would have been different if § 894 had been strictly followed.

Under these circumstances, this Court finds the trial court's response to the jury's questions did not render Petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.), *cert. denied*, 514 U.S. 1115 (1995).  Habeas relief cannot be granted for this claim.

## Ground VIII: Cumulative Error

Finally, Petitioner alleges the combined errors in his trial denied him the right to a fair trial.  The OCCA found no merit in this claim:

> In his eighth proposition of error, Appellant contends the combined errors in his trial denied him the right to a constitutionally guaranteed fair trial.  When there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial.  *Bechtel v. State*, 738 P.2d 559, 561 (Okla. Crim. App. 1987).  In Proposition Seven, we found that Appellant was not prejudiced by the trial court's failure to strictly follow the statutory procedure for answering the jury's question.  This single, harmless error, may not support a cumulative error claim.  *Ashinsky v. State*, 780 P.2d 201, 209 (Okla. Crim. App. 1989).  A cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant.  *Williams v. State*, 22 P.3d 702, 732 (Okla. Crim. App. 2001). Therefore, no new trial or modification of sentence is warranted and this proposition is denied.

*Key*, slip op. at 29).

"Cumulative-error analysis applies where there are two or more actual errors.  It does not apply, however, to the cumulative effect of non-errors."  *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) *cert. denied*, 522 U.S. 844 (1997)).  *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated.").

As discussed above, the OCCA found the error regarding the jury's questions did not deny Petitioner a fair trial.  Therefore, there is no cumulative error.  The Court finds the OCCA's determination of this claim was consistent with federal law.  This ground for habeas relief is meritless.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2).  He also has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A certificate of appealability cannot be issued.

**ACCORDINGLY,** Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and he is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 29th  day of September 2017.


Ronald A. White
United States District Judge
Eastern District of Oklahoma